[Civ. No. 21997. Second Dist., Div. Three. May 1, 1957.]

HOWARD CALVIN et al., Appellants, v. JOSEPH H. THAYER, Respondent.

Richard C. Dyer, Frederick M. Kraft, Low & Stone and Sheldon Berlin for Appellants.

Reed, Callaway, Kirtland & Packard and Henry E. Kappler, for Respondent.

SHINN, P. J.—Plaintiffs-appellants brought this action against the defendant physician and surgeon claiming damages for malpractice. The first cause of action of the complaint alleged that on June 15, 1952, Mrs. Calvin was injured in an automobile accident; she engaged the services of Dr. Joseph H. Thayer and numerous John Does (who were not served), as physicians and surgeons to examine, diagnose, treat and operate upon and care for her; she was suffering from a post-traumatic subdural hematoma which caused intracranial pressure causing her to suffer "constant severe headaches, dizziness, loss of memory, marked changes in personality, and loss of vision resulting from the choking of the

optical discs and atrophy of the optic nerves''; the condition required immediate surgery; defendants knew or should have known that if they failed to perform their full duties Mrs. Calvin would suffer injury and pain; that defendants wrongfully and negligently failed to properly diagnose or treat plaintiff's condition and they negligently failed to associate or refer plaintiff to another physician and surgeon who was qualified. It was alleged that if defendants had correctly diagnosed and treated her condition she would have wholly recovered from her injuries in two or three months, but that as a result of the negligence of defendants she suffered intense and excruciating pain and mental anguish and her optic nerves have been irreparably damaged and her vision permanently impaired. In a second cause of action Mr. Calvin realleged all the allegations of the first cause of action and prayed for damages which he had sustained.

Dr. Thayer filed an answer denying the accusations of negligence and damage. As a special defense it was alleged that the action, having been filed more than one year after the statute of limitations had commenced to run, was barred by the provision of section 340, subdivision 3 of the Code of Civil Procedure. The action was filed January 28, 1954. It was alleged that on or about January 17th, 18th and 19th, 1953, plaintiffs and each of them knew that Mrs. Calvin was suffering from a post subdural hydroma or hematoma as a result of her automobile accident, which was causing the ailments from which she was suffering, and they knew or should have known of any alleged failure on the part of Dr. Thayer to properly diagnose and treat Mrs. Calvin. As a further separate defense it was alleged that plaintiffs accepted $5,000 from Philip F. Pomerantz and executed in his favor a release of all persons from all claims for damages arising out of the injuries suffered in the automobile accident.

The cause was set for trial to a jury. At the opening of the trial defendant made a motion that the special defenses be tried first, pursuant to section 597, Code of Civil Procedure. The motion was granted and pursuant to stipulation of the parties the special defenses were tried to the court.

There was evidence of the following facts: For some two years Mrs. Calvin had been under the care of Dr. Thayer; among her ailments was what the doctor thought was a gall bladder condition that required an operation. Mrs. Calvin engaged defendant's services shortly after her accident and was placed in a hospital on three occasions, but without re-

ceiving medical or surgical treatment for injuries suffered in the accident; from the time of the accident until the following January Mrs. Calvin suffered from extreme pains in her head, dizziness, nausea and impairment of vision. Dr. Thayer attributed this condition to ailments from which she had previously suffered. Although X-rays were taken they did not suggest to Dr. Thayer that the condition that was causing Mrs. Calvin's suffering was an accumulation of fluid that was creating brain pressure and injury to the optic nerves. He did not discover that the condition was of traumatic origin.

Although on January 6th defendant was still advising a gall bladder operation either he or an associate recommended that Mrs. Calvin consult Dr. Seletz, a specialist in neurology and neurological surgery. Dr. Seletz acquainted himself with the patient's history and learned of a cerebral concussion which Mrs. Calvin had received in the accident. On January 9th, in a thorough examination, Dr. Seletz ascertained there was a swelling of the optic disc. He referred Mrs. Calvin to Dr. Schwartz, an ophthalmologist, who examined the patient and confirmed the findings of Dr. Seletz. Dr. Schwartz concluded and reported that the condition had a traumatic basis. On January 9th Dr. Seletz informed plaintiffs that there was an increased pressure within Mrs. Calvin's head due to a head injury and that he feared that it was a surgical condition, but believed it was one he could likely cure. On January 17th Dr. Seletz stated to plaintiffs there was another test that should be made (an air study), and that this test would not be made without an understanding beforehand that if, in the doctor's opinion, surgery was indicated he had permission to immediately proceed with an operation. Plaintiffs expressed their agreement. Mrs. Calvin entered the hospital January 17th. A writing was prepared which stated, in part: ''Mrs. Jewell Calvin, Dr. E. Seletz, Subdural Hematoma—preoperative diagnosis, possible Subdural Hematoma.'' Dr. Seletz testified that the diagnosis was written by him and that he signed the paper. Mr. and Mrs. Calvin signed another paper which stated, in part: ''Pre-operative diagnosis, possible Subdural Hematoma.'' This was over the signature of Dr. Seletz. On January 19th Mrs. Calvin signed a paper which read, in part: ''Operation and anesthetic record . . . preoperative diagnosis, shaving of head.'' Mrs. Calvin testified that the three papers dated January 17th were signed by her in blank. The papers which contained the diagnosis stated that the signers certified that the diagnosis was written in

before the operation. Dr. Seletz testified that he wrote in the diagnosis, that he never operated without writing in the diagnosis, and that to the best of his knowledge it was written in before the signatures of plaintiffs were attached.

The court found that on or about January 20, 1953, plaintiffs and each of them knew or in the exercise of reasonable care and diligence should have known that Mrs. Calvin was suffering from a post-traumatic subdural hydroma or hematoma as a result of the automobile accident and knew or in the exercise of ordinary care should have known of any failure on the part of Dr. Thayer to properly diagnose and treat the plaintiff, Mrs. Calvin. It was found that the relationship of physician and patient terminated January 6, 1953. These findings were made as to each affirmative defense of the statute of limitations. The court found to be untrue the allegation of the execution of a release that would operate in favor of Dr. Thayer and that the separate defense based upon the alleged release was not sustained. The court concluded that the action was barred by the provisions of section 340, subdivision 3 of the Code of Civil Procedure (the one-year statute). Judgment was for the defendant and plaintiffs appeal.

Plaintiffs' contentions are the following: (1) The findings as to the defense of the statute of limitations are without support in the evidence for the following reasons (a) plaintiffs did not have knowledge of the facts constituting their cause of action more than one year prior to the institution of the action; (b) even if they had knowledge prior to January 28, 1953, that the failure of the defendant to properly diagnose and treat Mrs. Calvin was responsible for her suffering up to that time, it was believed to be a temporary condition, that plaintiffs only learned of the permanency of the injuries within one year prior to institution of the action, and that if the action for damages due to what was believed to be a temporary condition was barred, there was yet a cause of action for permanent injuries that was not barred; (2) upon a trial of all the issues in the action plaintiffs might have been able to establish a cause of action for breach of contract or for deceit, and (3) they were "coerced" by the court into stipulating to try the special issues without a jury.

Although plaintiffs contend that they were prejudiced in some manner by the trial of the special issues, they do not point out wherein they claim that the procedure directed by the court was an abuse of discretion or that the introduction

of evidence on their behalf in trial of the special defenses was unduly restricted.

Although these several contentions are elaborated upon in some 80 pages of briefs of plaintiffs we think it is self-evident that if there was substantial evidence to support the foregoing findings the judgment was correct and the appeal is without merit.

With respect to the finding as to their knowledge of facts which they claim constituted malpractice, plaintiffs say: ''The only substantial conflict in the evidence concerned two questions . . . whether hospital records, signed by appellants prior to January 28, 1953, stated that the pre-operative diagnosis of Dr. Seletz was a hematoma when appellants signed them or whether this information was subsequently added without their knowledge.'' Such a statement made by an appellant is a tacit admission of the sufficiency of the evidence and, presently, we consider it to be an admission that there was sufficient evidence to support the implied finding that the records in question contained the statements appearing thereon at the time they were signed by plaintiffs. However, this was not the entire evidence relevant to the finding of knowledge. The information conveyed to plaintiffs by Dr. Seletz before and after the operation was such that plaintiffs must have known the facts constituting their cause of action, namely, that Dr. Thayer had not made a correct diagnosis nor given Mrs. Calvin the care and treatment that her condition demanded. Dr. Seletz explained to plaintiffs before the operation that Mrs. Calvin was suffering from pressure on her brain due to a head injury, and after the operation he explained what he had done to correct the condition. There was no denial by plaintiffs that Dr. Seletz made it clear to them on January 19 and again on January 20 that Dr. Thayer had made an incorrect diagnosis. ▮ The statute of limitations commenced to run when plaintiffs acquired knowledge of the facts constituting their cause of action. The relationship between plaintiffs and Dr. Thayer had been severed prior to that time and the doctor was guilty of no act or omission thereafter that would have interrupted the running of the statute or estopped him from relying upon it. As to the evidence of their knowledge plaintiffs say: ''Even if all the evidence be considered, sufficient error was committed to justify a weighing of the evidence by the appellate court. And the overwhelming weight of the evidence leads to a conclusion that this defense lacks any merit whatsoever.'' In considering

whether there was substantial evidence to justify the findings of knowledge we have come to the conclusion that the court could not reasonably have found that plaintiffs did not have knowledge of the facts we have mentioned as early as January 19, 1953.

With respect to plaintiffs' knowledge of the extent of Mrs. Calvin's injuries, both temporary and permanent, plaintiffs argue that they have one cause of action for the injuries which they considered to be temporary and another cause of action for the permanent injuries. The argument has no support in reason or authority. Mr. and Mrs. Calvin had, severally, a single cause of action for his or her damages. Any recovery would have included compensation for damages sustained to the time of trial and also for future detriment that could be established as the reasonably probable consequence of the injury.

Plaintiffs argue further that under the allegations of the complaint, upon the trial of all the issues, they might have been able to establish a cause of action for breach of contract or for deceit, and that neither cause of action would have been barred by the one year statute.

The sole theory of the complaint was the alleged negligence of Dr. Thayer. The duties assumed by defendant were those within the usual relationship of physician and patient, namely, the use of judgment, skill and care demanded for complete and competent professional service. There was no pleading or evidence whatever that defendant assumed any other duty or obligation. The action sounds in tort and was barred under the provisions of section 340, subdivision 3, of the Code of Civil Procedure. (*Huysman* v. *Kirsch*, 6 Cal.2d 302 [57 P.2d 908]; *Rubino* v. *Utah Canning Co.*, 123 Cal.App.2d 18 [266 P.2d 163]; *Speer* v. *Brown*, 26 Cal.App.2d 283 [79 P.2d 179].)

Plaintiffs argue further that upon a trial of all the issues they might have been able to establish liability of the defendant for deceit. None of the elements of a cause of action for deceit was pleaded and none was shown by the evidence.

In their briefs plaintiffs speak of having been "coerced" into waiving a jury for trial of the special defenses. There is nothing whatever in the record to justify any such statement. Plaintiffs' counsel objected to a separate trial of the special defenses and were overruled. The court thereafter merely suggested the inadvisability of trying the special defenses to a jury. Counsel expressly conceded that

those defenses if tried separately should be tried by the court, and both Mr. and Mrs. Calvin, when questioned by the court, agreed with their counsel to a trial by the court. Counsel were free to reject the court's suggestion and the record does not indicate that their acquiescence was due to timidity or misunderstanding.

As we have stated, the crucial question on the appeal is whether there was substantial evidence to support the findings as to the facts which started in operation the Statute of Limitations. Instead of confining their argument to this point by a fair discussion of the evidence and citation of applicable authorities, plaintiffs' briefs have wandered far from the point and cite 175 cases, code sections, law reviews, textbooks, etc., in support of numerous propositions of law having no relevancy whatever to the questions this court has for decision.

The legal principles applicable to the facts found in the present case were aptly stated by the court in *Hemingway* v. *Waxler*, 128 Cal.App.2d 68 [274 P.2d 699]. It would serve no good purpose to repeat them or to extend our opinion further.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied May 29, 1957, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1957.